V. F. Bond and Audrey A. Bond, Husband and Wife v. Commissioner. V. F. Bond v. Commissioner.
Bond v. Commissioner
Docket Nos. 28859, 28860.
United States Tax Court
T.C. Memo 1955-144; 1955 Tax Ct. Memo LEXIS 195; 14 T.C.M. (CCH) 534; T.C.M. (RIA) 55144; June 8, 1955
*195 From 1942 to 1947, inclusive, petitioners received income from a number of businesses. They also received second trust notes upon the sale of property owned by them. They conceded that the increase in their net worth each year was at least twice as great and in some years many times greater than the amount of income reported on their returns. They conceded also that their books were inadequate and that respondent was justified in using the net worth method to reconstruct their income. Held, respondent's reconstruction of petitioners' income by the net worth method is approved except that second trust notes are to be included in such computation at their fair market value rather than at their face value. Held, further, that part of the deficiencies for the years 1942 to 1947, inclusive, were due to fraud with intent to evade taxes. Ellsworth T. Simpson, Esq., 1406 G. Street, N.W., Washington, D.C., for the petitioners. Robert E. Johnson, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion These consolidated proceedings involve the following deficiencies in income tax and penalties under section 293(b) of the 1939 Code: Sec. 293(b)
Taxable Year
Deficiency
Penalty
1942
$ 7,890.65
$ 3,945.33
1943
11,192.01
5,596.01
1944
30,656.79
15,328.40
1945
39,492.83
19,746.42
1946
30,376.82
15,188.41
1947
44,927.30
22,463.65
The *196 issues are: (1) whether petitioners received the amounts of income as determined by respondent by use of the net worth and expenditures method; (2) whether the deficiencies were due to fraud with intent to evade taxes; (3) if not, whether the amount of income which petitioners failed to report for the year 1944 was in excess of 25 per cent of the amount of gross income stated on their return. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. V. F. Bond (hereinafter referred to as petitioner) and his wife, Audrey A. Bond, were residents of Arlington, Virginia, during the years in question. Petitioner filed an individual return for the taxable year 1942, and he and his wife filed joint returns for the remaining years in issue - all with the collector of internal revenue for the district of Virginia. Petitioner operated a retail coal and lumber business, a hotel business, a restaurant, a filling station, and a fuel oil business during the year in issue. He also built, remodeled, and sold houses and dealt extensively during the last 2 years in issue in second trust notes secured by real property. Petitioner *197 employed a bookkeeper but personally prepared much of the information from which his attorney made up his income tax return each year. Respondent determined that the returns which the petitioners filed did not correctly reflect their true income and, by use of the net worth and expenditures method, determined that they received income far in excess of that reported on their returns. The petitioners do not contest the respondent's right to use the net worth method. They concede that their books were inadequate. Set forth below are the amounts of income or loss reported by petitioners on their returns, the increase in their net worth which they concede occurred during the years in issue, the increase in their net worth determined by the respondent, and, by the addition thereto of uncontested amounts of nondeductible expenditures, the amounts of income which he determined they received: Respondent's
Conceded
Determination
Respondent's
Income
Increase in
of Increase
Determination
Year
Reported
Net Worth * *198 in Net Worth *
of Income
1942
[8,336.38)
$18,550.54
$18,361.19
$22,561.19
1943
9,585.89
22,939.18
25,713.22
30,545.82
1944
1,176.11
49,086.41
49,114.47
54,886.72
1945
5,515.46
65,346.93
64,881.50
67,457.66
1946
16,894.57
41,140.53
139,385.68
74,802.33
1947
32,487.05
86,911.05
82,185.32
94,555.32
Set forth below is the fair market value of notes, secured by second trusts, which petitioner received as a part of the purchase price of property sold during the taxable period and which he held on December 31 of each of the following years: 1941
$ 9,870.87
1942
5,987.91
1943
6,394.68
1944
8,086.63
1945
4,518.23
1946
140,660.21
1947
151,679.63 Petitioner owned real estate located at 2805 Jefferson Davis Highway, Arlington, Virginia, which he purchased in 1937 for $15,000. He operated his retail coal and lumber business as well as his hotel and restaurant on this property. From 1937 to 1939, he made improvements to the property consisting of a railroad siding, a coal unloading trestle, a reinforced concrete warehouse, excavation and dirt removal, concrete paving, and the addition of large weighing scales. Petitioner's returns for 1938 and 1939, when most of the improvements were made, show large expenditures under the caption "Merchandise bought for sale," in his computation of cost of goods sold. There were also large expenditures for repairs. No depreciation was ever claimed on any depreciable improvement on returns for subsequent years, *199 including those in issue. A part of the property was sold in 1946 for $55,000. On his return for that year, the petitioner claimed a cost basis of $91,000, and a long-term loss of $36,000. Petitioner maintained no inventory records during the years in issue. On a financial statement filed with an Alexandria, Virginia, bank in 1947 for the purpose of obtaining a loan, petitioner stated that he had "other income" of $60,000 per year, and understood that statement to mean "net" income. Later in that year, he wrote a letter to another Alexandria bank, stating that his net worth was $735,184.09. Petitioner received the amounts of income as determined by respondent by use of the net worth and expenditures method and as alleged in his amended answers, except that second trust notes received by petitioner upon the sale of real estate are to be included in the net worth computation at their fair market value as herein determined rather than at their face value. A part of the deficiencies for each year was due to fraud with intent to evade tax. Opinion RICE, Judge: As heretofore noted, the petitioners concede that the respondent was justified in computing their income for the years in issue *200 by use of the net worth and expenditures method. The only three objections which they raise to that computation are: (1) that the cost of improvements which petitioner made to property at 2805 Jefferson Davis Highway, prior to December 31, 1941, should be included in his assets as of that date; (2) that second trust notes received by petitioner as a part of the purchase price of real estate sold by him should be included among his assets at their fair market value rather than at their face value; and (3) that the respondent erred in not including inventories in the net worth computation. The burden was upon the petitioners to overcome the presumptive correctness of the respondent's determination of the deficiencies. Except for the issue with reference to the second trust notes, they have not succeeded in disproving the correctness of his determination of income. The petitioners conceded that one of the reasons their books and records were not accurate was because they had expensed certain items which were capital in nature. It is for this reason as much as any other that the respondent refused to include the alleged cost of the improvements at 2805 Jefferson Davis Highway among petitioner's *201 assets as of December 31, 1941. Petitioner testified as to the cost of those improvements but he had no records of any kind to substantiate his testimony. In addition to that, the respondent's agent testified that the Richmond, Fredericksburg, and Potomac Railroad had paid for the major part of the siding. We note also that petitioner claimed no depreciation on the depreciable improvements on his returns subsequent to the time when such improvements were made. When the property was sold in 1946, he claimed a cost basis on his return far in excess of that which he now claims. On the basis of the record as it stands, we are unable to allow the cost of any improvements made to that part of the property at 2805 Jefferson Davis Highway, which petitioner sold in 1946, as an addition to his assets at the beginning of the taxable period in question. The evidence is wholly inadequate and, such as there is, too conflicting to permit such an allowance. In addition to the fact that we are unable to make any determination as to the cost of the improvements, we do not know that all such improvements were, in fact, capital in nature rather than deductible expenses in the year when made. And insofar *202 as those improvements which were, in fact, capital in nature are concerned, we do not know to what extent they should have been depreciated at the time the property was sold. We think respondent's position that petitioner expensed the cost of all of the improvements in the years when made is not unreasonable. If those improvements were capital in nature but were expensed when made, the position which the taxpayer now takes is directly contrary to the position he took at the time the expenditures occurred. By expensing the cost of capital improvements in the year when made, petitioner enjoyed an immediate tax benefit from that course of action. Those years are now barred by the statute of limitation and having taken a position at that time which was to his advantage, we do not think that he should now be allowed to take a contrary position and reap a double tax benefit therefrom. The obvious purpose of the "adjusted basis" provision in the statute is to provide for a tax free return of capital once, but not more than once. See Mertens, Law of Federal Income Taxation, Section 21.161, page 601. (C.A. 5, 1947), *203 (C.A. 5, 1942); (C.A. 5, 1938), certiorari denied . Insofar as the second trust notes which petitioner received upon the sale of real estate are concerned, we agree with him that their fair market value was less than their face value. The principal factors bearing on a determination of the fair market value of second trust notes are: (1) the financial condition of the maker; (2) the value of the property; (3) the amount of the first trust; (4) the amount which the maker has invested in the property; and (5) the length of the trust note. Petitioner's evidence was wholly inadequate to reach any exact determination of the fair market value of the specific notes in question. His expert witness testified that, generally, second trust notes in the area where the property was located are discounted, to some extent, when sold. Doing the best we can under the Cohan rule, [1] we have determined the fair market value of the notes in question as set forth in our findings. Insofar as inventories are concerned, petitioner admitted that he kept no inventory records, but argues *204 that inventories should have been included in the net worth computation. By not including inventories in such computation, the respondent assumed that they remained relatively constant during the years in question. There is no showing in the record that that is an unreasonable assumption and we conclude that he did not err by failing to include inventories in his computation of income. . The respondent, of course, had the burden of proving by clear and convincing evidence that petitioner's returns for the years 1942 to 1947, inclusive, were fraudulently filed with intent to evade tax. We are satisfied from all of the evidence before us, including petitioner's testimony at the hearing, that respondent has carried his burden of proof. The petitioners, in fact, concede that their income in each of such years was at least twice as great and sometimes many times greater than that reported on their returns. They also admit that petitioner was negligent in keeping his books and records and that such books and records did not clearly reflect his true income. But, they argue that petitioner's education was limited and that the errors which were made were *205 due to negligence rather than fraudulent intent. We think otherwise. Consistent understatement of income by large amounts over a period of years is highly persuasive evidence of fraudulent intent. , (on appeal C.A. 5, January 1955); (C.A. 6, 1940). The understatements of income here are too large and too consistent over too long a period of time to believe that they were due to anything other than a deliberately fraudulent intent to evade the payment of taxes. As we said in , page 664: "* * * it would seem that [petitioner] has been a successful businessman during the years here in issue. Any man intelligent enough to earn that amount of income must be presumed to be intelligent enough to make an honest effort to report it correctly and pay the tax thereon. Sometimes there are unusual circumstances which excuse a taxpayer's failure to meet the common standards required of all. In this record we find no such circumstances. Rather, we find a blatant disregard for the minimum responsibility required of every taxpayer and a willfully fraudulent and continuing effort to defeat and evade *206 the payment of taxes due by him * * *." Having concluded that a part of the deficiencies were due to fraud with intent to evade tax, the statute of limitation is not a bar to their assessment and collection, and we do not reach the third issue. Decisions will be entered under Rule 50. Footnotes
*. Not adjusted for nontaxable portion of long-term capital gains.
1. (C.A. 2, 1930).↩